UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRY LEONARD LARSON,

    Plaintiff,

v.                                  Case No. 2:19-cv-212

                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff filed an application for DIB and SSI on September 7, 2016, alleging a disability onset date of October 31, 2014. PageID.34. Plaintiff identified his disabling conditions as lung issues, diabetes, asthma, bronchitis, hypertension, peripheral neuropathy, psoriasis, and frequent pneumonia. PageID.220. Prior to applying for DIB and SSI, plaintiff completed the 11th grade and had past employment as a service manager and service technician. PageID.41, 221. The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 4, 2018. PageID.34-42. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

I. **LEGAL STANDARD**

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 31, 2014, and that he met the insured status requirements of the Social Security Act through December 31, 2016. PageID.36. At the second step, the ALJ found that plaintiff has severe impairments of diabetes mellitus, peripheral neuropathy, essential hypertension, and obesity. PageID.37. At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.37.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he has additional limitations. He can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can frequently stoop, kneel, and crouch. He can occasionally crawl. The claimant can never work at unprotected heights nor around moving mechanical parts. He can never operate a motor vehicle in a place of work. He can never have exposure to concentrated amounts of dust, odors, fumes and/or pulmonary irritants.

PageID.37. The ALJ also found that plaintiff could not perform any of past relevant work. PageID.41.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.41-42. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled sedentary work in the national economy such as inspector (30,000 jobs), sorter (36,000 jobs), and assembler (90,000 jobs). PageID.42. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 31, 2014 (the alleged onset date) through December 4, 2018 (the date of the decision). *Id*.

### III. DISCUSSION

Plaintiff has raised three errors on appeal.

**A. The ALJ's analysis of plaintiff's treating doctor's opinions was legally insufficient and his decision to give those opinions "little weight" was not supported by substantial evidence.**

Plaintiff contends that the ALJ failed to properly review the opinion of Michael Grossman, M.D., and that the ALJ's decision to give the doctor's opinions "little weight" was not supported by substantial evidence. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, the ALJ addressed Dr. Grossman's opinions as follows:

> Dr. Grossman completed a treating source statement dated July 9, 2018 indicating he has treated the claimant for type-II diabetes mellitus, neuropathy, obesity, and asthma. He opines the claimant can stand 15-30 minutes and must lie down for 1-2 hours after 1-2 hour period of any activity. He opined the claimant is unable to do any activity for more than 1-2 hours, without needing to rest for a similar amount of time and cannot walk extended distances or climb stairs

5

secondary to falls related to diabetic neuropathy (Exhibit 9F). Little weight is assigned to this assessment as it is not supported by the contemporaneous treatment notes. The longitudinal physical examination indicates the claimant has good sensation in the bilateral feet. In January 2017, he completed a health questionnaire and denied musculoskeletal pain, dizziness, numbness, tingling, shortness of breath, or a cough (Exhibits 5F/10, 8F). Additionally, as will be discussed below, the claimant's asthma has been life-long and remains well controlled with inhalers as demonstrated by normal pulmonary examinations (Exhibit 8F).

PageID.39.

The doctor's July 9, 2018 opinion is set forth in a letter ("to whom it may concern") and refers to plaintiff's condition as type-II diabetes mellitus exacerbated by neuropathy and asthma. PageID.469. The ALJ points out that the doctor's opinion is not supported by contemporaneous medical records. In this regard, the ALJ reviewed Dr. Grossman's treatment of plaintiff since at least November 2015. PageID.38. Given the lack of supporting records cited in Dr. Grossman's July 9, 2018 opinion, the Court looks to the ALJ's review of the doctor's treatment records. With respect to diabetes treatment, the ALJ noted that:

> As of the alleged onset date, the claimant's diabetes has been assessed as uncomplicated and well-controlled with the claimant appearing to be in no acute distress during medical visits (Exhibit 8F). Primary care physician Dr. Michael Grossman MD indicates the claimant has reported merely "minor complaints" related to diabetes (Exhibits 4F/2, 8F/18). In April 2016, the claimant described his diabetes as "mild" and "unchanged." He denied appetite changes, polydipsia, polyuria, and fatigue (Exhibit 8F/32-33, 37). The evidence indicates he has been maintained on a medication regimen that includes Lantus/Basaglar, Byduereon, Metformin, Victoza, Actos, and Glimepiride, and consistently denied side effects, which contradicts his testimony of multiple side effects (Exhibit 8F/18, 30, 36). In November 2015, the claimant admitted that he terminated the prescribed insulin at will, as he did not believe it was helpful (Exhibit 8F/27, 36). There has been some elevation in his blood sugar level to 225-275 in large part due to dosage confusion, skipped meals, and an improper diet, including drinking Pepsi and Mountain Dew on a daily basis. In November 2016, Dr. Grossman instructed the claimant to stop drinking soda and to increase his water intake (Exhibit 8F/3, 21, 25, 27, 31). Otherwise, his blood sugar levels have ranged from 151-200 and from 113-129 as in October 2017 when Dr. Grossman indicated the claimant's diabetes was well-controlled (Exhibits 4F/2, 8F/6, 15, 34).

PageID.38.

6

> Concerning peripheral neuropathy, the evidence references a diagnosis of peripheral neuropathy that is treated with Neurontin, with the claimant reporting daily symptoms that improve with the medication. It is significant that in April 2017 he described his symptoms as no more than moderate (Exhibits 4F/2, 8F/15). Consistent with the claimant's reporting of improved symptoms are multiple physical examinations that reflect good sensation in the bilateral feet (Exhibits 4F/3, 8F/4, 19, 22, 25, 27-28, 30, 38). Additionally, the evidence does not reflect complaints of recent falls, nor the use of an assistive device for ambulation. Additionally, in January 2017 he completed a questionnaire and denied any musculoskeletal pain, numbness, or tingling in the extremities (Exhibit 5F /10). Furthermore, the claimant acknowledges the ability to tend to his personal cares, prepare simple meals daily, and to get out regularly (Exhibit 5E).

PageID.39.

> With respect to plaintiff's asthma, the ALJ noted:

> Regarding complaints of asthma, according to the evidence the claimant has a history of asthma since childhood that has been treated with an albuterol inhaler. It should be noted that asthma is not a primary focus of treatment and is largely referenced in the claimant's past medical history. Although he alleged multiple hospitalizations in 2014 secondary to asthma, the record reflects exacerbations of breathing difficulty secondary to bouts of pneumonia in March 2014 and September 2014 (Exhibits 1F/34, 36, 8F/15). He complains of exacerbations with chemicals and temperature extremes but admits to relief with the albuterol inhaler (Exhibit 8F/15). The longitudinal pulmonary examinations reveal normal excursion with symmetric chest walls and quiet, even and easy respiratory effort with no use of accessory muscles (Exhibits 8F/28, 30, 33, 38). Accordingly, asthma is assessed as a non-severe impairment. However, the residual functional capacity accommodates for potential exacerbations and preludes exposure to pulmonary irritants.

PageID.40.

The ALJ reviewed plaintiff's treatment history with Dr. Grossman and explained in detail the reasons why he assigned the doctor's opinion little weight, based in part on the lack of contemporaneous treatment records. The ALJ's evaluation of the doctor's opinion is supported by substantial evidence. Accordingly, this claim of error is denied.

> **B. The ALJ's residual functional capacity (RFC) assessment is not supported by substantial evidence.**

7

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). The ALJ determines the RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(e) and 416.920(e).

The ALJ's decision contained a detailed review of plaintiff's alleged symptoms and medical history in developing the RFC. PageID.38-40. Plaintiff contends that the ALJ's RFC determination is flawed because it fails to include an explanation for limiting plaintiff to sedentary work, that the ALJ failed consider the combined effects of asthma and obesity, that the ALJ failed to consider medication side effects, and that the ALJ failed to consider plaintiff's claim that he needed extra time for restroom breaks due to diarrhea and vomiting.[1]

### 1. Asthma, obesity and sedentary work

Plaintiff appears to contend that he cannot perform even sedentary work due to his asthma and obesity. *See* Plaintiff's Brief at PageID.484, 486. As an initial matter, the ALJ did not find plaintiff's asthma to be a severe impairment, but he did consider it in evaluating plaintiff's RFC. The ALJ noted plaintiff's testimony regarding "lung issues including asthma, bronchitis, and frequent bouts of pneumonia" and "shortness of breath and the need to use an inhaler 4-5 times a week." PageID.38. The ALJ noted that plaintiff's asthma was life long and well controlled with inhalers as demonstrated by normal pulmonary examinations. PageID.39. As discussed, the ALJ

---

[1] Plaintiff's Statement of Errors does not set out these specific claims of error. Nevertheless, the Court will address them. See Notice (ECF No. 10) ("The initial brief . . . must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand. Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue.").

addressed plaintiff's history of asthma. Even though the ALJ found that the asthma was a non-severe condition, he adjusted the RFC to accommodate this condition by excluding work which involved "exposure to concentrated amounts of dust, odors, fumes and/or pulmonary irritants." PageID.37, 40.

Plaintiff contends that the ALJ did not explicitly address the combined effects of his severe impairment of obesity and his non-severe impairment of asthma. While obesity is no longer a listed impairment, the Commissioner addresses the effects of obesity on a claimant's ability to perform work-related activities. In this regard, Social Security Ruling (SSR 02-1p) provides guidance, stating in pertinent part:

> [Even] though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).[2]

While SSR 02-1p provides guidance for the ALJs in evaluating a claimant's obesity, it does not create a separate procedure requiring the Commissioner to consider obesity in every case. As the Sixth Circuit stated in *Bledsoe v. Barnhart*, 165 Fed. Appx. 408 (6th Cir. 2006):

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest

---

[2] The Court notes that SSR 19-2p (effective May 20, 2019) rescinds and replaces SSR 02-1p for new applications filed on or after its effective date. *See* SSR 19-2p fn. 14. Because plaintiff filed his application in 2016, SSR 02-1p applies to this review of the ALJ's decision.

9

> that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe*, 165 Fed. Appx. at 411-12.

Here, the ALJ considered the impact of plaintiff's obesity throughout the decision. As discussed, the ALJ found plaintiff's obesity to be a severe impairment. PageID.37. At step four, she considered plaintiff's extreme obesity in limiting him to sedentary work, stating in part:

> The claimant also has a history of obesity, which has been considered when assessing the residual functional capacity. According to the objective evidence, the claimant reported weighing 325 pounds during the application stage (Exhibit 2E). The evidence reflects some weight loss, as he weighed 309 pounds in October 2015 with a body mass index (BMI) of 43.1, 313 pounds in February 2017 with a BMI of 43.7. However, by April 2018 his weight had rose to 337 pounds with a BMI of 47 (Exhibit 8F/4, 22, 37). According to Social Security Ruling 01-29, a BMI of 40 or above reflects level III, extreme obesity (Exhibit 2E). Considering the claimant's history of obesity as well as diabetic peripheral neuropathy, the undersigned restricts the claimant to the sedentary exertional level with postural and environmental restrictions.

PageID.39.

Based on this record, the Court concludes that the ALJ considered plaintiff's obesity in combination with his other impairments. The record reflects that ALJ accounted for both plaintiff's obesity and his asthma by placing a number of environmental restrictions in his RFC. *See* PageID.37.[3]  Accordingly, plaintiff's claim of error is denied.

### 2. Medication side effects and restroom breaks

Plaintiff's claim is based upon his testimony at the administrative hearing: that he has side effects to weekly Bydureon injections; that he has been on this medication "[o]n and off for a year and a half probably"; that he throws up three times a day during the first and second day after the injection; and that he has diarrhea the first and second day after the injection. *See*

---

[3] Environmental limitations include restrictions related to: driving; working at unprotected elevations; working with dangerous machinery; extremes of temperature, noise, and vibration; and fumes, dust, and poor ventilation. *See Yuch v. Commissioner of Social Security*, 360 F. Supp. 2d 858, 862 (E.D. Mich. 2005).

Plaintiff's Brief (ECF No. 12, PageID.487); Hearing Trans. (PageID.69-71). Plaintiff testified: that while he told his doctor about the side effects, "[w]e didn't really come up with a solution to it;" that he was off of the medicine for three months; and, that he had been back on it for a 1½ months. PageID.71.

In evaluating the limiting effect of a claimant's symptoms, the ALJ should consider the side effects of any medication taken to alleviate symptoms. *See Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). However, such claims must be supported by objective medical evidence. *See Essary v. Commissioner of Social Security*, 114 Fed. Appx. 662, 665-66 (6th Cir. 2004) (where claimant testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians); *Farhat v. Secretary of Health & Human Services*, No. 91-1925, 1992 WL 174540 at *3 (6th Cir. July 24, 1992) ("[claimant's] allegations of the medication's side-effects must be supported by objective medical evidence").

While plaintiff testified about vomiting and diarrhea for the two days following a weekly medication injection, he presented no medical evidence to support his claim of a disabling medication side effect. The ALJ considered plaintiff's medication side effects. Specifically, the ALJ found that "[t]he evidence indicates he has been maintained on a medication regimen that includes Lantus/Basaglar, Byduereon, Metformin, Victoza, Actos, and Glimepiride, and consistently denied side effects, which contradicts his testimony of multiple side effects." PageID.38. Accordingly, plaintiff's claim of error is denied.

11

### C. The ALJ's analysis of plaintiff's subjective symptoms was legally insufficient, and his finding that plaintiff's statements were "not entirely consistent" with the other evidence, was not supported by substantial evidence.

The gist of plaintiff's claim is that the ALJ failed to consider how his conditions have become progressively worse over time. Plaintiff's Brief at PageID.488. Plaintiff relies on SSR 16-3p, which provides in pertinent part,

> If an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another and consistent with the objective medical evidence and other evidence in the record, we will determine that an individual's symptoms are more likely to reduce his or her capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in an age-appropriate manner. However, *inconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time.* This may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms.

SSR 16-3p, 2017 WL 5180304 at *9 (Oct. 25, 2017) (emphasis added).

Here, the ALJ reviewed plaintiff's conditions chronologically. Plaintiff alleged a disability onset date of October 31, 2014. PageID.34. By October 2017, Dr. Grossman indicated that plaintiff's diabetes was well-controlled. PageID.38. With respect to peripheral neuropathy, plaintiff denied musculoskeletal pain, numbness, or tingling in the extremities in January 2017, and described his symptoms as no more than moderate in April 2017. PageID.39. Asthma was not a primary focus of plaintiff's treatment since the alleged onset date. PageID.40. With respect to plaintiff's obesity, the ALJ noted that plaintiff had his highest recorded weight in April 2018, recognized this worsening condition (extreme obesity), and restricted plaintiff to sedentary exertional work with postural and environmental restrictions. PageID.39.

Finally, the ALJ did not discount his symptoms due to a failure or refusal to comply with his course of treatment. *See* Plaintiff's Brief at PageID.488-489. Rather, the ALJ acknowledged that plaintiff's history of medication non-compliance was "secondary to the lack of insurance and financial constraints." PageID.38. Based on this record, the ALJ properly evaluated plaintiff's symptoms. Accordingly, plaintiff's claim of error is denied.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated:  March 23, 2021                             /s/ Ray Kent
                                                   RAY KENT
                                                   United States Magistrate Judge